FILED
2012 Jan-17  AM 10:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TERRY BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:10-cv-2561-PWG |
| | ) | |
| CLEBURNE COUNTY COMMISSION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION

In this action, plaintiff Terry Butler ("Plaintiff") brings claims arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., "as amended by the Equal Pay Act" ("EPA"), 29 U.S.C. § 206(d), as well as under Alabama contract law.  (*See* Doc.[1] 25 ("Complaint" or "Compl.")). The action before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b); the General Order of Reference dated May 8, 1998, as amended July 27, 2000; and Rule 72, Fed. R. Civ. P.  The cause now comes to be heard for findings and a recommendation on two respective Rule 12(b) motions to dismiss.  The first was filed by the Cleburne County Water Authority (the "Water Authority"), Jerry Vaughn, Roger Hand, Sam Britt, Chris Jackson, and Joe Bill Conkle.[2] (Doc. 31 (the "Water Authority Motion to Dismiss" or "Water Auth. MTD")).  The

---

[1]Citations to "Doc(s). ___" are to the document numbers assigned by the clerk to the pleadings and other documents in the court file, as reflected on the docket sheet.

[2]Defendant Joe Bill Conkle states that he is incorrectly identified in the Complaint as "Joe Bill Kunkle."  (Doc. 31 at 1).  The clerk is directed to correct the style of the case to identify this

other was filed by the remaining defendants, namely, the Cleburne County Commission (the "Commission"), the "Cleburne County Commission D/B/A the Cleburne County Water Authority," Joel Robinson, Dwight Williamson, and Tracy Lambert. (Doc. 33 (the "Commission Motion to Dismiss" or "Comm'n MTD")). Plaintiff has filed a consolidated response in opposition to both motions. (Doc. 35 "Plaintiff's Opposition Brief" or ("Pl. Opp. Brief")). The movants have filed respective replies thereto. (Doc. 36 ("Water Authority Reply" or "Water Auth. Reply"); Doc. 37 ("Commission Reply" or "Comm'n Reply")). Upon consideration, it is recommended that both motions to dismiss are due to be granted in part and denied in part. As a result, the claims due to remain viable are only those asserted against the Water Authority and the Commission and based only on the following legal theories: (1) ADEA age-discrimination claims founded upon Plaintiff's discharge; (2) ADEA retaliatory discharge; (3) FLSA overtime, and only to the extent that the violation was "willful," and (4) FLSA retaliatory discharge, also only to the extent that the violation was "willful." All other claims and defendants are due to be dismissed with prejudice.

## I.    REVIEW STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss all or some of the claims in a complaint on the ground that its allegations fail to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group,*

---

defendant by his correct name.

*LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Nor is it proper to assume that the plaintiff can prove facts it has not alleged or that the defendants have violated the law in ways that have not been alleged.  *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (internal quotation marks and citation

omitted).

## II.    BACKGROUND[3]

Plaintiff was initially hired by the Water Authority in the year 2000 to work as an operations employee.  (Compl. ¶¶ 19, 20).  Sometime later, apparently in that same year (*see id.* ¶ 20), Plaintiff "became an employee directly of the [Commission]," which allegedly "appoints, directs, and supervises" the Water Authority.  (*Id.* ¶ 19).  At that time, Plaintiff, who was compensated on an hourly basis, began to be paid by the Commission and received benefits and retirement.  (*Id.* ¶ 20).  According to Plaintiff, defendants Robinson, Williamson, Lambert, Vaughn, Hand, Britt, Jackson, and Conkle (collectively the "Individual Defendants") each were, at all times relevant, members of the Commission[4] and were Plaintiff's "employers and supervisors."  (*Id.* ¶ 3).  The Individual Defendants, Plaintiff says, told him that he was an employee of the Commission, and either they or someone else acting on behalf of the Commission provided him with a "Personnel Policies and Procedures of Cleburne County Handbook" (Compl. at 1), "describing benefits and other employment related matters."  (*Id.* ¶ 20).  Plaintiff further alleges that "Defendants" thereafter "directed the manner and method of his duties and responsibilities."  (*Id.*)

Plaintiff contends that both the Commission and the Water Authority "directed him to keep up with all overtime hours – which were defined as all hours over 40 [in a workweek]."  (*Id.* ¶ 20).

---

[3]The facts summarized in this section are taken from the Complaint unless otherwise noted.  They are assumed to be the facts only for purposes of the instant motions to dismiss. They may not be the actual facts.

[4]Although the Complaint alleges that all of the Individual Defendants were members of the Commission, the court recognizes that all defendants assert that Vaughn, Hand, Britt, Jackson, and Conkle assert that they are or were instead members of the Board of the Water Authority.  (Water Auth. MTD ¶ 7; Comm'n MTD at 10).  Robinson, Williamson, and Lambert admit that they are or were members of the Commission.  (Comm'n MTD at 2).

Plaintiff alleges that, "on average, [he] worked 65 to 70 hours per week." (*Id.* ¶ 23). Despite that, however, the Commission and the Water Authority and the Individual Defendants directed that Plaintiff and other hourly employees were to be paid only for 40 hours regardless of how many hours they actually worked. (Compl. ¶ 23). By so doing, Plaintiffs asserts, the Commission, the Water Authority, and the Individual Defendants "intentionally and in pattern and practice" refused to pay overtime to which Plaintiff and other hourly employees were entitled. (*Id.* ¶¶ 21, 22).

As Plaintiff approached 60 years of age, the "Defendants" hired one Jason Ingram, who "was under forty years of age and had no experience," and required Plaintiff to train him. (*Id.* ¶ 23). On July 8, 2008 (*see id.* ¶ 20), one week after Ingram obtained his operator's license, "Defendants" terminated Plaintiff's employment. (*Id.* ¶ 23). Plaintiff alleges expressly that his termination was "due to his age." (Compl. ¶ 23). He further alleges that he was subjected to "retaliation for protected activity in violation of the Age Discrimination in Employment Act," and "for complaining about the wrongful payment of wages based on age and in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended by the Equal Pay Act, 29 U.S.C. § 206(d) and 215(a)(3)." (*Id.* ¶¶ 12-13).

Plaintiff alleges that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 29, 2008. (Compl. ¶ 24). On July 21, 2010, the EEOC provided Plaintiff with his Notice of Right to Sue. (*Id.* ¶ 25; Doc. 25-1). Plaintiff filed this action on September 20, 2010. (Doc. 1). After the defendants filed motions to dismiss, the court, acting *sua sponte*, ordered Plaintiff to file an amended pleading giving a more definite statement of his claims, pursuant to Rule 12(e), Fed. R. Civ. P. (Doc. 23). His now-governing Second Amended Complaint filed in response to that order contains four counts. In Count One, he

brings claims pursuant to the ADEA against the Commission and the Water Authority (and, as discussed below, perhaps also against the Individual Defendants), alleging that they "have discriminated and retaliated against [him] in the terms conditions and privileges of his employment on the basis of age." (Compl. ¶ 28).  In Count Two, Plaintiff brings claims against all defendants pursuant to the FLSA, alleging that they have "discriminated against" him by "intentionally fail[ing] to pay one and one[-]half time[s] his hourly wage for overtime due."  (*Id.* ¶ 33).  Count Three is captioned simply "Retaliation," the statutory or other legal basis of which is not otherwise specified. There Plaintiff seeks to impose liability against all defendants based on allegations that they "have retaliated against [him] on the basis of his complaining about violation of the Defendants['] wrongful conduct."  (*Id.* ¶ 36).  Finally, in Count Four, Plaintiff asserts a cause of action against the Commission for breach of contract under Alabama law. In that count, Plaintiff alleges that he "entered into a contract with the [Commission]" (*id.* ¶ 40), that he "fulfilled his obligations [under] said contract" (*id.* ¶ 41), and that the Commission "breached said contract." (Compl. ¶ 42).  He further alleges in the introductory paragraph of his Complaint that "the Defendant entities breached the employment contract with the Plaintiff as created by the Personnel Policies and Procedures of Cleburne County Handbook."  (*Id.* at 1).

## III.  DISCUSSION

### A.  Untimely Service of the Complaint

In their motion to dismiss, the Commission, Robinson, Williamson, and Lambert (collectively the "Commission Defendants"[5]) assert that they are due to prevail because the Plaintiff

---

[5]The Commission Motion to Dismiss states that it is filed on behalf of the Commission Defendants referenced in the text as well as "the Cleburne County Commission D/B/A the Cleburne County Water Authority."  While Plaintiff's original pleading did identify one of the

failed to serve them within 120 days of the filing of the action, as provided in Rule 4(m), Fed. R.

Civ. P.[6]  Plaintiff served these defendants on the 136th day.  (*See* Docs. 1, 3, 4, 5, and 6).  The

Commission Defendants posit that "Rule 4(m) mandates that an action be dismissed if a plaintiff

fails to serve the defendant within 120 days of filing the complaint unless the plaintiff can show

'good cause' for his failure."  (Doc. 21 at 2 (emphasis original)).  However, that is not the law.

Rather, Rule 4(m) grants discretion to the district court to extend the time for service of process even

in the absence of a showing of good cause.  *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132

(11th Cir. 2005); *Lepone-Dempsey v. Carroll County Com'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007);

*see also Henderson v. United States*, 517 U.S. 654, 662 (1996) (recognizing the same in dicta).

Indeed, if a district court finds that a plaintiff failed to show good cause, "the district court must still

consider whether any other circumstances warrant an extension of time based on the facts of the

case."  *Lepone-Dempsey*, 476 F.3d at 1282.  "Only after considering whether any such factors exist

may the district court exercise its discretion and either dismiss the case without prejudice or direct

that service be effected within a specified time."  *Id.*  A non-exhaustive list of factors to be

considered in determining whether to grant a discretionary extension includes (1) whether the statute

---

defendants as "the Cleburne County Commission d/b/a the Cleburne County Water Authority,"
his now-governing Complaint does not identify any entity by a "d/b/a" or "doing business as"
designation.  In any event, the designation "d/b/a" is merely descriptive of the person or
corporation who does business under some other name and does not create a separate legal entity.
*See Hughes v. Cox*, 610 So. 2d 465, 470 (Ala. 1992); *Snowden v. CheckPoint Check Cashing*,
290 F.3d 631, 634 n.2 (4th Cir. 2002).

[6]Rule 4(m), Fed. R. Civ. P., provides in pertinent part as follows: "If a defendant is not
served within 120 days after the complaint is filed, the court-on motion or on its own after notice
to the plaintiff-must dismiss the action without prejudice against that defendant or order that
service be made within a specified time. But if the plaintiff shows good cause for the failure, the
court must extend the time for service for an appropriate period."

of limitations would bar re-filed claims, *see Horenkamp*, 402 F.3d at 1133; *Lepone-Dempsey*, 476 F.3d at 1282; (2) whether the defendant is evading service or conceals a defect in attempted service, *see* Rule 4(m), Advisory Committee Note, 1993 Amendments; (3) the nature of the plaintiff's efforts to serve the defendant after the 120-day time for service had expired; (4) the prejudice, or the lack thereof, that would be borne by the defendant if the case were to proceed; and (5) the judicial preference for adjudication on the merits. *See Kurka v. Iowa County, Iowa*, 628 F.3d 953, 958-59 (8th Cir. 2010); *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002).

While Plaintiff has not shown "good cause" within the meaning of Rule 4(m) for failing to serve these defendants within 120 days, the record shows that Plaintiff's failure resulted from a mistaken understanding of the requirements of having the court effect service, not to gain an advantage. Plaintiff inquired with the clerk's office on the status of service on the 123rd day after the action was filed, and after learning that service had not been initiated, Plaintiff proceeded with reasonable diligence thereafter in furnishing the necessary materials to the clerk for service by certified mail. Service was then made upon each of these defendants within 16 days after expiration of the 120-day period. None of the defendants suggest that they suffered any prejudice from that delay. Further, a dismissal under Rule 4(m), even though without prejudice, would bar at least all ADEA claims as untimely. *See Bost v. Federal Exp. Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004). That would work an unduly harsh result. *See Horenkamp*, 402 F.3d at 1133 (district court acted within its discretion in granting an extension where dismissal without prejudice for untimely service foreclose the plaintiff's claim because the statute of limitations had run, defendant had notice of the suit, and defendant was properly served 29 days after the 120-day period had run); *see also Abele v. Hernando County*, 161 Fed. App'x 809, 812 (11th Cir. 2005) (district court granted extension

affording a total of 148 days from the date of the original complaint to effect service); *cf. Henderson*, 517 U.S. at 659 (approving in dicta of district court's grant of an extension under Rule 4(m) that enabled the plaintiff to effect service on the 148th day after the action was filed).  The Commission Defendants are not entitled to dismissal based on Rule 4(m).

### B.    Age Discrimination in Employment Act

#### 1.    Introduction

The ADEA generally makes it an unlawful for an employer to discharge or otherwise discriminate because of age against an individual at least forty years old with respect to compensation, terms, conditions, or privileges of employment.  *See* 29 U.S.C. §§ 623(a)(1), 631(a).  The ADEA also contains an anti-retaliation provision that prohibits an employer from discriminating against an employee because such individual "has opposed any practice made unlawful by [the ADEA], or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]."  29 U.S.C. § 623(d).  A retaliation claim under that provision requires a showing that an employer was motivated to take materially adverse action against the plaintiff because he made a complaint about what he reasonably and in good faith believed to be age discrimination unlawful under the ADEA or because the plaintiff filed or otherwise participated in an EEOC or judicial proceeding involving allegations of unlawful age employment discrimination.  *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311-12 (11th Cir. 2002); *Brillinger v. City of Lake Worth*, 317 Fed. App'x 871, 877 n. 6 (11th Cir. 2008); *Bond v. Department of Air Force*, 202 Fed. App'x 391, 396-97 (11th Cir. 2006).  Plaintiff's allegations in Count One suggest that he is attempting to assert ADEA claims alleging both "discrimination" because of age and "retaliation" against only the Commission and the Water Authority.  (Compl. ¶

28). However, in the introductory paragraph of the Complaint, Plaintiff states that he is charging not only the Commission and the Water authority but also "the individual defendants named herein with unlawful, age-based employment practices and retaliation under the [ADEA]." (Compl. at 1). All defendants move for dismissal of the ADEA claims.

### 2.    Liability of the Individual Defendants under the ADEA

The Individual Defendants argue that they are entitled to dismissal of the ADEA claims against them because there is no individual liability under that statute. They are correct. *See Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995); *see also Dearth v. Collins*, 441 F.3d 931, 933-34 & n. 2 (11th Cir. 2006). Accordingly, to the extent that the Complaint asserts ADEA discrimination or retaliation claims against the Individual Defendants, such claims are due to be dismissed.

### 3.    "Employer" Liability under the ADEA

Liability under the ADEA is limited to "employers." *See Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1263-63 (11th Cir. 1997). The Commission and the Water Authority each argue that all ADEA claims against them, whether for age discrimination or retaliation, are due to be dismissed on the basis that they are not Plaintiff's "employer" within the meaning of the statute. In this vein, the Water Authority's motion to dismiss posits, erroneously, as further discussed below, that the ADEA limits covered "employers" to those that employ 15 or more employees; the Water Authority then proceeds to deny in its brief that it has that many employees, and it argues that Plaintiff has not sufficiently pled otherwise. (Water Auth. MTD at 2-3 ¶ 3). More particularly, the Water Authority points out that Plaintiff has alleged in relevant part as follows: "Defendants Cleburne County Commission and Cleburne County Water Authority operate in Cleburne County Alabama with two places of business: 62 Brockford Road, Heflin, Alabama 35264

10

and 120 Vickery Street, Room 207, Heflin Alabama 36264.  Defendants employ over 15 employees."

(Compl. ¶ 2).  The Water Authority argues that such allegations suggest no more than that the Water

Authority and the Commission have 15 employees *between them* and that Plaintiff's allegations do

not support such an aggregation.  As a result, the Water Authority argues that it "is not subject to the

Court's jurisdiction under the [ADEA]."  (Water Auth. MTD at 2 ¶ 3).

Contrary to the Water Authority's suggestion, the employee numerosity threshold for

establishing "employer" status under the ADEA is not jurisdictional; it is merely an element of a

claim for relief.  *See Graham v. Colonial Bank*, 2007 WL 136752, *2 n. 1 (M.D. Ala. Jan. 16, 2007);

*Grimsley v. Methodist Richardson Med. Ctr. Found., Inc.*, 2011 WL 825749, *2 (N.D. Tex. March

3, 2011); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006) (holding that Title VII's 15-

employee numerosity requirement is not jurisdictional).  Also contrary to the Water Authority's

argument, a defendant must have "20 or more employees," not just 15 or more[7], in order to qualify

as an "employer" covered by the ADEA.  29 U.S.C. § 630(b).  While the Water Authority has

recognized as much in its reply brief (Water Auth. Reply at 7), the court generally does not consider

issues or arguments raised for the first in a reply, for to do so deprives the non-movant of a fair

opportunity to respond.  *See Hall v. Coram Healthcare Corp.*, 157 F.3d 1286, 1290 (11th Cir. 1998);

*Howington v. Smurfit-Stone Container Corp.*, 2011 WL 6093299, *7 (S.D. Ala. Dec. 7, 2011).

Further, the Water Authority has not argued, even in its reply brief, that the Complaint is due to be

dismissed specifically because the Complaint's reference to "over 15 employees" does not

sufficiently raise an inference that the 20-employee threshold has been met. Accordingly, the Water

---

[7]Fifteen employees is the minimum number required to be an "employer" covered by Title VII and the Americans with Disabilities Act.  *See* 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5).

Authority is not entitled to a dismissal on that basis.[8]  Instead, the Water Authority has limited its arguments to the claims that the Complaint's allegations are insufficient to support (1) that the Water Authority standing alone meets a *15-employee* threshold or (2) that the employees of the Water Authority and the Commission may be *aggregated* to meet the statutory threshold, whatever the number.

Under the standard of review applicable to a Rule 12(b)(6) motion, the court is required to interpret the Complaint in favor of the Plaintiff, generally affording him the benefit of the doubt on ambiguities.  *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1252 (11th Cir. 2003); *Cramer v. State of Fla.*, 117 F.3d 1258, 1262 n. 8 (11th Cir. 1997).  As such, it is fair to view the Complaint's assertion that "Defendants employ over 15 employees" as meaning that the Commission and the Water Authority *each* have more than 15 employees, even if the pleading may not be entirely free from ambiguity.  *See EEOC v. Hotspur Resorts Nevada, Ltd.*, 2011 WL 4737409, *4 (D. Nev. Oct. 5, 2011) ("It is not clear which entity Plaintiff believes to have been the employer.  Plaintiff alleges that both Defendants were employers with more than fifteen employees and engaged in business affecting interstate commerce.  The Court will not dismiss against either Defendant.").

Further, even assuming that the Complaint suggests only than that the Commission and the

---

[8]At least two district courts have declined to dismiss materially similar complaints based on such an argument made at the pleading stage, even when properly raised.  *See Santichen v. Laurel Mgmt. Co.*, 2007 WL 587239, *4 (W.D. Pa. Feb. 20, 2007) ("Plaintiff has obviously mistaken Title VII's definition of employer with the ADEA's. ... The mistake is harmless, however, as the explicit language of the Complaint-"more than fifteen"-does not preclude the possibility that Defendant employs the requisite number of workers."); *Solon v. Kaplan*, 2001 WL 123769, *2 n. 1 (N.D. Ill. Feb. 13, 2001) ("The complaint alleges that the [defendant] had over fifteen employees. It is, however, entirely possible that discovery will reveal that it had twenty or more employees. Thus, dismissal of the ADEA count based on [plaintiff's] failure to allege the requisite number of employees is unnecessary at this time.").

Water Authority have the statutorily required number of employees when their workers are combined, such aggregation may be permissible. The Eleventh Circuit has explained that "two or more state or local governmental entities will be treated as a single 'employer' ... where one entity exerts or shares control over the fundamental aspects of the employment relationships of another entity, to such a substantial extent that it clearly outweighs the presumption that the entities are distinct." *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc). Such an assessment is made based upon "the totality of the circumstances," with examining factors such as whether there exists "interrelation of operations" and "centralized control of labor operations," as well as "'indicia of control' .. drawn from the agency context, including "the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; [and] the obligation to pay or the duty to train the charging party."

*Id.* (internal quotation marks and citation omitted).

The Water Authority argues that the Complaint does not allege specific facts supporting that the Water Authority and the Commission constituted such a "single employer." Both the Water Authority and the Commission also contend that the Complaint must be interpreted as asserting only that the "other" entity was the Plaintiff's sole employer, at least at the time of his termination. However, in order to survive a Rule 12(b)(6) motion, a complaint need contain only a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8(a), Fed. R. Civ. P. Plaintiff need not set forth with specificity all facts establishing the defendant's status as an "employer." *See Heckert v. 2495 McCall Rd. Corp.*, 2008 WL 508079, *5 (M.D. Fla. Feb. 21, 2008); *Makousky v. Wing King Three, Inc.*, 2005 WL 3481538, *2 (M.D. Fla. Dec. 20, 2005); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1087-88 (7th Cir. 2008); *cf. Swierkiewicz v. Sorema, N.A.*,

13

534 U.S. 506, 515 (2002) (indicating that a plaintiff who has alleged that his employer subjected him to unlawful race discrimination in violation of Title VII and age discrimination in violation of the ADEA is not required to plead the specific circumstances establishing an inference that an adverse action was motivated by discriminatory intent).  Here, Plaintiff has pled that both the Commission and the Water Authority were entities that both simultaneously employed him, directed and supervised his activities, kept track of his work hours, and were responsible for terminating his employment.  These allegations are not wholly implausible on their face, as a matter of either fact or law.  It may be that Plaintiff will be ultimately unable to prove those allegations, but he has, however, pled these claims sufficiently to provide fair notice of their nature and to allow discovery on them to proceed.  Accordingly, neither the Water Authority nor the Commission is entitled to dismissal of the claims alleging that they terminated Plaintiff because of age in violation of the ADEA.

### 4.    Sufficiency of ADEA Retaliation Allegations

The Commission and the Water Authority contend that the claims in Count One alleging ADEA retaliation, as opposed to substantive age discrimination, are due to be dismissed because the Complaint itself fails to provide fair notice of the nature of such claims.  Specifically, the defendants maintain that Plaintiff has not pled that he engaged in any activity protected by the ADEA that or that such activity motivated his discharge.  The defendants are incorrect.

In order to state a claim for ADEA retaliation, the Complaint must include allegations stating or reasonably implying that the defendant took materially adverse action against him because he engaged in activity protected by the ADEA.  Under the liberal pleading standard of Rule 8(a), Fed. R. Civ. P., however, a complaint may state a claim even if it does not include specific underlying

14

facts establishing the existence of an alleged unlawful retaliatory motive for an identified adverse job action. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510-11 (2002); *Williams v. New York City Housing Auth.*, 458 F.3d 67, 71-72 (2d Cir. 2006). In that light, Plaintiff's relevant allegations, although minimal and somewhat scattered throughout the pleading, are enough to state a claim. Count One alleges that the Commission and the Water Authority "have discriminated and retaliated against Plaintiff in the terms, conditions and privileges of employment on the basis of his age in violation of the [ADEA]." (Compl. ¶ 28). While such an allegation is broad and likely unduly vague in itself, the Complaint specifically identifies only a single adverse action that might underlie an ADEA claim: his termination occurring on July 8, 2008. (Compl. ¶ 20). Termination is, of course, an adverse action capable of supporting an ADEA retaliation claim. Plaintiff has also pled that he was subjected to "retaliation for previous protected activity in violation of the Age Discrimination in Employment Act" (Compl. ¶ 12), more particularly, "for complaining about the wrongful payment of wages based on age." (Compl. ¶ 13). Provided that a plaintiff harbors an honest and objectively reasonable belief that the employment practice at issue violates the ADEA, his complaint to the employer in opposition to such practice constitutes statutorily protected activity, even if the protested practice is not, in fact, unlawful. *See Weeks*, 291 F.3d at 1311-12. On that score, it is clear that discrimination in the payment of wages based on age may violate the ADEA. *See* 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer .. to ... discriminate against any individual with respect to his compensation ... because of such individual's age."); *MacPherson v. University of Montevallo*, 922 F.2d 766, 774-75 (11th Cir. 1991) (recognizing that ADEA plaintiffs established a prima facie case of age discrimination by showing that similarly situated younger employees received higher wages). Plaintiff's pled allegations are not implausible on their face and give

15

reasonable notice of a claim asserting that he was fired in retaliation for complaining about age-based discrimination in the payment of wages. Thus, dismissal of the ADEA retaliatory discharge claims against the Commission and the Water Authority is not warranted on this ground.[9]

### 5.    Administrative Exhaustion

#### a.    EEOC Charge Procedures

The Commission and the Water Authority also contend that the ADEA claims are subject to dismissal based on various arguments maintaining that Plaintiff failed to exhaust administrative remedies prior to filing this action. Before bringing claims in federal court, the ADEA requires a plaintiff to have filed a "charge alleging unlawful discrimination" with the EEOC. 29 U.S.C. § 626(d)(1); *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 395 (2008). The filing of a charge triggers an "'an integrated, multi-step enforcement procedure' that enables the EEOC to detect and remedy various discriminatory employment practices." *Bost*, 372 F.3d at 1238 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 62 (1984)). Under that procedure, the EEOC is to provide "prompt" notice to the employer that a charge has been filed, 29 U.S.C. § 626(d)(2), and the EEOC then investigates the charge and may attempt to secure the employer's voluntary compliance with the law through conciliation efforts. *Bost, supra*; *see also Shell Oil Co.*, 466 U.S. at 63. Once the EEOC has

---

[9]To the extent that Plaintiff might be attempting to raise ADEA claims, either for age discrimination or for retaliation, based upon some adverse action *other than* his termination, such claims *are* due to be dismissed pursuant to Rule 12(b)(6). The Complaint wholly fails to identify the substance of any other adverse actions allegedly taken against the Plaintiff because of age or because of activity protected by the ADEA. Therefore, the Complaint does not give fair notice of the basis of any such other ADEA claims. *See, e.g., Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300-01 (11th Cir. 2010) (pled allegation that "[i]n his work for [the employer], Plaintiff ... was subjected to a hostile discriminatory environment on the basis of race, in violation of 42 U.S.C. § 1981," was "merely a formulaic recitation of the elements of a § 1981 claim and, standing alone, does not satisfy the pleading standard of Federal Rule of Civil Procedure 8." (internal quotation marks and citation omitted)).

concluded its investigation and any conciliation efforts, the EEOC is to issue a notice advising the charging party that he or she has the right to bring a judicial action within 90 days to remedy the alleged violations.  29 U.S.C. § 626(e).  However, a plaintiff may bring suit to enforce the ADEA before a right-to-sue notice has been issued, provided that 60 days have elapsed since the filing of the charge.  29 U.S.C. § 626(d); *Bost*, 372 F.3d at 1238; *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 (11th Cir. 1996).  While EEOC administrative exhaustion is a condition precedent to the filing of a judicial action rather than a jurisdictional requirement, the plaintiff's failure to exhaust may bar an action where the defendant timely raises the issue.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Myers v. Central Fla. Investments, Inc.*, 592 F.3d 1201, 1223-24 (11th Cir. 2010); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1000-01 (11th Cir. 1982).

### b.    Timeliness of the EEOC Charge

First, the Commission and the Water Authority contend that Plaintiff's EEOC charge was untimely filed.  In order to be timely, a plaintiff in Alabama must have filed such charge within 180 days of the alleged unlawful employment practice. 29 U.S.C. § 626(d)(1)(A); *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1263 (11th Cir. 2003).  Plaintiff's termination on July 8, 2008 serves as the adverse employment action underlying his ADEA claims.  Accordingly, to bring ADEA claims based on the termination, Plaintiff had to file an EEOC charge by January 5, 2009.[10]

Plaintiff has pled that he filed a charge of discrimination with EEOC "on or about" December 29, 2008.  (Compl. ¶ 15).  In response to the Defendants' motions to dismiss his prior complaint, Plaintiff filed correspondence dated December 29, 2008 that he and his counsel addressed to the

---

[10]The 180th day following July 8, 2008 was actually January 4, 2009.  However, because that day fell on a Sunday, the filing period extended to the next day.  *See Gardner v. Aviagen*, ___ Fed. App'x ___, ___, 2011 WL 5984859, *2 (11th Cir. Nov. 30, 2011).

EEOC's Birmingham District Office, indicating that it was sent via facsimile.  (Doc. 20-3 at 3-9

("12/29/08 EEOC Correspondence"))[11].  In his letter to the EEOC, Plaintiff stated in relevant part

as follows:

> My name is Terry Butler.  My address is [redacted].  My telephone number is [redacted].
>
> **I wish to file a charge of discrimination against my former employers, the Cleburne County Water Authority and the Cleburne County Commission.**  I was employed by both in my capacity as manager of the Cleburne County Water Authority.
>
> I was terminated on July 8, 2008 for illegal and discriminatory reasons. That was the last date that negative job action occurred.
>
> I was discriminated against because of my age.  At the time of my termination, I was 61 years of age and approaching retirement.
>
> I was discriminated against because a physical disability I have.  I suffered an injury on the job and was discriminated against because of my physical condition after the injury.
>
> I was discriminated against because I reported to the Alabama Ethics Commission what I believed to be violations of the Alabama Ethics Law by members of the Cleburne County Water Authority.

----

[11]Generally speaking, where a court faced with a Rule 12(b)(6) motion to dismiss considers evidentiary materials beyond the complaint, it must convert the motion to one for summary judgment governed by Rule 56.  *See* Rule 12(d), Fed. R. Civ. P.  However, where documents are referenced in the complaint or are otherwise central to the plaintiff's claims and the authenticity of the documents is undisputed, they may be considered in connection with a Rule 12(b)(6) motion without converting the motion to one for summary judgment.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  On that basis, the court may consider the materials submitted to the EEOC as a purported charge and the right-to-sue notice, which are referenced in the Complaint, without converting the instant motions to dismiss to ones for summary judgment.  *See Lambert v. Alabama Dep't of Youth Servs.*, 150 Fed. App'x 990, 991-92 (11th Cir. 2005); *Molina v. Los Angeles County, Dep't of Mental Health*, 58 Fed. App'x 311, 313 (9th Cir. 2003); *Hodge v. Orlando Utilities Comm'n*, 2009 WL 5067758, *4 (M.D. Fla. Dec. 15, 2009); *Mack v. Wilcox County Comm'n*, 2009 WL 4884310, *4 n. 1 (S.D. Ala. Dec. 9, 2009); *Feldman v. Law Enforcement Assoc. Corp.*, 779 F. Supp. 2d 472, 486 n. 8 (E.D.N.C. 2011).

I was discriminated against by not being paid overtime pay as required by the law of the United States and the State of Alabama.

I was discriminated against by being given no notice of termination, no pre-termination hearing or other process.

I was discriminated against by being denied both procedural and substantive due process.

**PLEASE ACCEPT THIS AS MY CHARGE OF DISCRIMINATION AGAINST MY FORMER EMPLOYERS. THE CLEBURNE COUNTY WATER COMMISSION AND THE CLEBURNE COUNTY COMMISSION.**

(12/29/08 EEOC Correspondence (emphasis original)). Plaintiff also signed an accompanying letter of the same date advising the EEOC of the identity of, and contact information for, his attorney. (*Id.*)

Finally, the correspondence includes a letter from Plaintiff's counsel, also dated December 29, 2008, addressed to the EEOC's Birmingham District Office, which was to "supplement[ ]" the letter from Plaintiff, and it provided separate mailing addresses for the Commission and the Cleburne County Water Authority. (*Id.*) Plaintiff's counsel concluded that letter by stating:

> **I understand that by faxing these documents to you, Mr. Terry Butler [Plaintiff] will be perfecting a filed charge of discrimination with the EEOC. If my understanding is in any way incorrect, please let me know as the 180 day deadline will expire on or about January 4, 2009.**

(*Id.* (emphasis original)).

The record also includes a copy of a charge of discrimination that Plaintiff completed on EEOC Form 5, the agency's standard pre-printed charge form. (Doc. 17-1 (the "1/28/09 EEOC Charge")). On that form, signed by Plaintiff under penalty of perjury on January 26, 2009 and received by the EEOC two days later[12], Plaintiff identified the both the Water Authority and the

---

[12]The EEOC charge is actually stamped as having been received by the EEOC Birmingham District office on January 28, *2008*. However, the parties recognize that the 2008 stamp date is erroneous; it would predate both not only the date Plaintiff signed the charge but

Commission as his "employer." (*Id.*)  After checking the boxes indicating that he had been subjected

to "discrimination based on" both "age" and "disability" (but not "retaliation"), Plaintiff stated as

follows:

> I am a 61 year old male who was employed by the above-named employer as a
> manager.  I sustained an on-the-job injury and was discriminated against because of
> my physical condition after the injury.  I was not paid for overtime ... .  I reported
> what I believe to be violations of the Alabama Ethics Law by members of the
> Cleburne County Water Authority.  I was given no notice of termination, no pre-
> termination hearing or other process.  I was approaching retirement when I was
> terminated from my job on July 8, 2008.
>
> I believe I have been discriminated against by being denied both procedural and
> substantive due process, by being terminated in violation of the [ADEA] and the
> Americans with Disabilities Act [("ADA"), 42 U.S.C. § 12101 et seq.]

(*Id.*)

While the defendants admit that Plaintiff filed a charge on EEOC Form 5, they contend that

because such charge form was not filed with the EEOC until January 28, 2009, it was untimely.

Plaintiff responds that the correspondence that his attorney faxed to the EEOC on December 29,

2008, although not on EEOC Form 5, constituted a charge under the ADEA and was timely filed.

The Defendants reply that those "unverified informal documents are insufficient to constitute an

EEOC charge."  Thus, the issue becomes whether Plaintiff's December 29, 2008 correspondence to

the EEOC, either standing alone or as supplemented by his more formal charge filed January 28,

2009, constitutes a timely, valid charge under the ADEA.

In order to constitute a valid charge under the ADEA, a filing with the EEOC need not be on

EEOC Form 5.  *See Holowecki, supra*.  And contrary to the defendants' suggestion, the ADEA,

---

also the termination event about which Plaintiff complains.  Rather, it is undisputed that the
EEOC actually received the charge on January 28, *2009*.

unlike Title VII of the Civil Rights Act ("Title VII"), does not require a charge to be sworn. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 n.3 (11th Cir. 2001) (recognizing that "the charge requirements [under Title VII and the ADEA] do differ in some respects, particularly regarding the verification and writing requirements."); *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 797 (8th Cir. 1998); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 543 n.1 (7th Cir. 1988); *Canty v. Fry's Electronics, Inc.*, 736 F. Supp. 2d 1352, 1376-77 (N.D. Ga. 2010); *Bonham v. Regions Mtg.*, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001). The Supreme Court has also rejected that the EEOC must act on a filed document as a charge, by notifying the employer of the claimant's allegations or otherwise, in order for a document to qualify as a charge. *Holowecki*, 552 U.S. at 403-04. Rather, a filing with the EEOC will be deemed a charge under the ADEA provided it names the employer, describes the alleged unlawful discrimination, and may further be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.*, 552 U.S. at 402; *see also* 29 C.F.R. §§ 1626.3, 1626.6, 1626.8. In conducting an analysis of the last element, "the filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Holowecki*, 552 U.S. at 402.

In the correspondence faxed to the EEOC on December, 29, 2008, Plaintiff provided his name and contact information, he identified his former employers as both the Commission and the Water Authority and he alleged in relevant part that they had unlawfully terminated him because of age on July 8, 2008, when he was 61 years old. (12/29/08 EEOC Correspondence). Also on December 29, 2008, Plaintiff's counsel sent a separate faxed letter to the EEOC supplementing that

information, apparently at the EEOC's request, with separate addresses for both the Commission and the Water Authority.  (*Id.*)  The December 29, 2008 letters also clearly manifested Plaintiff's desire for the EEOC to treat his letter as a charge of discrimination and take remedial action to protect his rights.  Indeed, he could have hardly done so more expressly and unambiguously.  Based on the contents of the letters faxed to the EEOC on December 29, 2008, all elements of an ADEA charge were satisfied.

Notwithstanding Plaintiff's express statements in the December 29, 2008 correspondence requesting the EEOC to treat it as a charge of discrimination, the Defendants urge that the correspondence was insufficient to constitute a request to activate the administrative process because Plaintiff later filed a formal charge on EEOC Form 5 on January 28, 2009.  Under the Defendants' theory, Plaintiff's filing of the later, formal charge demonstrates that he did not consider the earlier faxed correspondence to be as a charge or desire it to be treated as such.  However, because an employee is entitled to amend or supplement an earlier-filed charge to clarify or augment allegations or cure a technical deficiency, *see* 29 C.F.R. §§ 1626.8(c), 1601.12(b); *see also Edelman v. Lynchburg College*, 535 U.S. 106 (2002), courts must be cautious in reading too much into the filing of a later charge as it bears on the employee's supposed understanding of the purpose or effect of an earlier filing.  *See Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 569 (2d Cir. 2006) ("FedEx argues that the fact that Kennedy later filled out an actual EEOC charge form indicates that her earlier intention was not to file a "charge." ...  There is nothing in the record, however, that indicates that Kennedy, by also filing a charge form, was doing anything more than supplementing her earlier charge, or acting out of a surfeit of caution.").  Indeed, the Supreme Court's decision in *Holowecki*, which the defendant conspicuously fail to acknowledge, likewise rejected such an argument:

> Petitioner notes that respondent did file a Form 5 (a formal charge) with the EEOC but only after she filed her complaint in the District Court. This shows, petitioner argues, that respondent did not intend the earlier December 2001 filing to be a charge; otherwise, there would have been no reason for the later filing. What matters, however, is whether the documents filed in December 2001 should be interpreted as a request for the agency to act. Postfiling conduct does not nullify an earlier, proper charge.

*Holowecki*, 552 U.S. at 406. The documents Plaintiff faxed to the EEOC in December 2008 unambiguously requested the agency to act on them as a charge of discrimination, and her later charge filed on January 28, 2008 does not alter that fact. The ADEA claims are not due to be dismissed on the ground that Plaintiff failed to file a timely EEOC charge.

### c.   Exhaustion as to the Commission

The Commission next renews an argument made in its earlier supplemental motion to dismiss (Doc. 17) that the ADEA claims against it are due to be dismissed on the ground that Plaintiff allegedly did not include the Commission's address on his EEOC charge, which led, the Commission claims, to the Commission not receiving notice of the Plaintiff's charge from the EEOC. The Commission recognizes that Plaintiff's charge on the standard form filed on January 28, 2009, names both the Commission and the Water Authority as respondent employers. The Commission highlights, however, that such charge includes only a single address for both respondents, a post office box in Heflin, Alabama.

The Commission's argument would seem to imply an assertion that the post office box listed on the January 2009 filing is a valid address only for the Water Authority. Even assuming that to be so, however, the Commission is not entitled to a dismissal of the ADEA claims on this basis. While the ADEA requires the EEOC to notify employers after receiving a filed charge, 29 U.S.C. § 626(d)(2), there is no affidavit or other evidence in the record indicating that the EEOC failed to

23

send such notice to the Commission or that the latter did not receive it. But even if the EEOC failed to provide the Commission with the notice, the fact remains, as discussed above, that the correspondence that Plaintiff and his attorney faxed to the EEOC on December 29, 2008, was sufficient to constitute a valid charge of discrimination, and that is so as to both the Water Authority and the Commission. That correspondence expressly named the Commission as an employer and furnished a separate mailing address for it: 120 Vickery Street, Room 207, Heflin, Alabama 36264. (Doc. 20-3 at 6). The Commission does not assert that such is an invalid address for it.[13] The ADEA "requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action." *Holowecki*, 552 U.S. at 403-04; *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320 (11th Cir.2001) (recognizing that courts are "reluctant to condition an action for discrimination on the EEOC's performance of its duties"(citing *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1063 (11th Cir. 1994)). Further, even if a party is not named in an EEOC charge at all, suit against that party may be permitted if the party's identity or participation in the alleged discrimination is or is likely to be uncovered during the EEOC's reasonable investigation growing out of the charge. *Lewis v. Asplundh Tree Expert Co.*, 402 Fed. App'x 454, 457 (11th Cir. 2010) (citing *Hamm v. Members of Bd. of Regents*, 708 F.2d 647, 650 (11th Cir. 1983), and *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. May 1981)). Here, the EEOC charge expressly identified the Commission as one of Plaintiff employers and alleged that it subjected him to unlawful age discrimination. Therefor, it is more than reasonable to assume that the EEOC's investigation would have encompassed alleged discrimination by the

---

[13]An online search suggests that the address, which is for the Cleburne County Courthouse, is a correct one.
*See* http://local.yahoo.com/info-14822827-cleburne-county-commission-ofc-heflin

Commission.  The Commission's argument on this issue is without merit.

### d.    Exhaustion of the ADEA Retaliation Claims

The Commission and the Water Authority also argue that, even if Plaintiff has sufficiently

pled claims of ADEA retaliation in the Complaint, such claims are due to be dismissed because no

such claim was included in his EEOC charge.  The defendants admit that the charge asserts that

Plaintiff's discharge constituted unlawful age discrimination.  The defendants highlight, however,

that Plaintiff left the "retaliation" box blank on the EEOC Form 5 charge he filed in January 2009.

Indeed, neither that form nor the prior correspondence submitted by Plaintiff and his attorney as a

charge allege that Plaintiff, prior to his discharge, was subjected to or was even aware of any actions

by any employer of his that might have violated the ADEA, never mind that Plaintiff complained

about them.  Rather, the only reference in the charge materials to what might be considered

"retaliation" in a generic sense is Plaintiff's stated belief that he was subjected to "discrimination"

because he "reported  reported to the Alabama Ethics Commission what [he] believed to be

violations of the Alabama Ethics Law by members of the Cleburne County Water Authority."

In order to ensure that the EEOC is afforded the first opportunity to investigate and promote

conciliation of claims within its jurisdiction, a judicial claim may be barred for want of

administrative exhaustion where the claim is founded upon on allegations of new acts of

discrimination not presented in an EEOC charge.  *See Gregory v. Georgia Dep't of Human

Resources*, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (per curiam); *Wu v. Thomas*, 863 F.2d 1543,

1547-48 (11th Cir. 1989).  However, "judicial claims are allowed if they 'amplify, clarify, or more

clearly focus' the allegations in the EEOC [charge]." *Gregory*, 355 F.3d at 1279 (quoting *Wu*, 863

F.2d at 1547).  Further, a plaintiff is authorized to proceed with judicial claims provided that they

are within "'the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gregory*, 355 F.3d at 1280 (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). It is thus generally sufficient if a judicial claim of discrimination is "like or related to the allegations contained in the charge." *Gregory*, 355 F.3d at 1280 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *see also Chanda v. Englehard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000).

However, whether Plaintiff's ADEA retaliation claim is sufficiently like or related to the claims asserted in his EEOC charge is a close question in light of circuit precedent. On the one hand, in *Chanda*, the Eleventh Circuit affirmed the dismissal of a Title VII retaliatory discharge claim based on complaints about national origin discrimination where the underlying EEOC charge expressly challenged the plaintiff's discharge as constituting both substantive disability discrimination and retaliation for making complaints about disability discrimination, and in violation of the ADA. *See* 234 F.3d at 1224. Although the EEOC is charged with enforcing both Title VII and the ADA in the same manner, *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002), the court concluded that, because "[n]othing in [the plaintiff's] EEOC filing mentions discrimination based on national origin, any complaint about such discrimination, or a claim under Title VII," "a reasonable investigation based on the EEOC charged did not and would not encompass retaliation based on complaints about national origin discrimination." *Id.* Several other Eleventh Circuit cases are to like effect. *See Hoffman v. Boeing*, 596 F.2d 683, 686 (5th Cir. 1979) (federal employee plaintiff's exhaustion of administrative remedies relative to his ADEA age-discrimination claim did not satisfy exhaustion requirements relative to a claim of race discrimination in violation of Title VII); *Thomas v. Miami Dade Public Health Trust*, 369 Fed. App'x 19, 22 (11th Cir. 2010)

(plaintiff failed to exhaust her claims alleging that she was not promoted because of race and sex where her EEOC charge alleged that such failure to promote was the result of unlawful retaliation); *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 Fed. App'x 586, 600 (11th Cir. 2008) (Title VII charges based on race and national origin reasonably could not be expected to grow out of charge alleging only disability discrimination); *Hillemann v. University of Cent. Fla.*, 167 Fed. App'x 747, 749 (11th Cir. 2006) (plaintiff's claims alleging that he was not hired for three marketing positions because of race and gender discrimination and retaliation were barred where his EEOC charge about those positions alleged only age discrimination).

On the other hand, the Eleventh Circuit more recently held in *Gregory* that a Title VII claim for retaliatory discharge based on complaints about race discrimination was exhausted even though the EEOC charge, filed following the plaintiff's discharge, left the "retaliation" box unmarked and did not disclose that the plaintiff made any complaints or otherwise engaged in activity potentially protected under Title VII or any other federal employment statute. *See* 355 F.3d at 1279-81. Rather, the plaintiff, an African-American female, asserted in her charge that she was fired because of "race" and "sex" in violation of Title VII, and she further stated that white male employees had been treated more favorably because they were not required to "provide doctor's excuses when they used sick leave" and "did not have unwarranted memoranda placed in their records for arbitrary reasons." *Id.* at 1279. In holding that such charge supported a retaliation claim based on complaints about race discrimination, the court noted not once but *three* times that the plaintiff had prepared the charge without the assistance of counsel, *see id.* at 1278, 1280, and, as such, it was to be construed liberally. *Id.* at 1280 (citing *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 161-62 (5th Cir. 1971)). The court then explained:

The proper inquiry here therefore is whether Dr. Gregory's complaint was like or related to, or grew out of, the allegations contained in her EEOC charge. ... The ultimate act that she complained about was that she was terminated. At the point at which she filed the charge, she "believe[d]" that she was terminated because of her race and sex. She set forth the relevant dates of discrimination in the charge, as well as the reasons why she believed she was terminated. Although not clear in the record, the EEOC presumably investigated, at least in some fashion, the possible reasons why Dr. Gregory was terminated, growing from her initial "belief" that it was because of her race and sex. Indeed, there could be various permutations of non-legitimate reasons why an employee is ultimately terminated. In Dr. Gregory's situation, for example, it could be that race and sex were the only reasons, as she initially believed, why she was terminated. It could also be, however, that Dr. Gregory was terminated in retaliation for having complained about Dr. Fuller's disparate treatment of her, inter alia, during physician scheduling and patient assignments. ...

After a careful *de novo* reading of Dr. Gregory's EEOC charge ..., under the liberal EEOC charge strictures of *Sanchez* [*v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)], we hold that the district court did not err in finding that Dr. Gregory's retaliation claim was not administratively barred by her failure to mark the retaliation space on the EEOC template form. The facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination. That is, she stated facts from which a reasonable EEOC investigator could have concluded that what she had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment to the hospital's administration. Specifically, shortly after being subjected to certain allegedly discriminatory acts, she was terminated. An EEOC investigation of her race and sex discrimination complaints leading to her termination would have reasonably uncovered any evidence of retaliation.

*Gregory*, 355 F.3d at 1280. *See also Harrison v. IBM Corp.*, 378 Fed. App'x 950, 953 (11th Cir. 2010) (plaintiff exhausted administrative remedies with respect to the discrimination claims based on sex, national origin, disparate treatment, and hostile work environment raised in his second complaint; such claims were inextricably intertwined with the retaliation claims in employee's third EEOC charge because they all related to events surrounding his poor performance review and termination).

The instant case falls somewhere between *Chanda* and *Gregory*.  Plaintiff's EEOC charge specifically challenges the legality of his termination as being violative of a discrimination statute administered by the EEOC.  But given that the EEOC charge held insufficient to support a retaliation claim in *Chandra* did likewise, it does not necessarily follow that an EEOC investigation into Plaintiff's discharge could be reasonably expected to encompass an inquiry into a motive prohibited by some provision of federal law *other than* that alleged in the charge. Indeed, the charge in *Chandra* claimed that the plaintiff's firing also constituted unlawful retaliation for complaints he had made, albeit about discrimination based on disability prohibited by the ADA, rather than about discrimination based on national origin prohibited by Title VII.  Therefore, it clearly cannot help Plaintiff here that his charge also alluded to his firing as being in retaliation for reporting state ethics law violations.  Such reporting is not protected activity under the ADEA.  *See Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("Although no magic words are required, to qualify as protected opposition [for purposes of ADEA retaliation], the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA.").  Nor are state ethics laws the bailiwick of the EEOC.

It still might be argued, though, that this case is still more like *Gregory* because, as there, and unlike in *Chandra*, Plaintiff seeks to bring a judicial claim for retaliatory discharge based on complaints about the *same kind of substantive discrimination* that the charge alleged motivated the termination, *i.e.*, race in *Gregory*, age here.  *Gregory*'s reasoning and result are also supported, at least tangentially, by several recent Supreme Court decision downplaying the distinction between "discrimination" based on a particular protected characteristic and "retaliation" for making complaints about discrimination based on that same characteristic, going so far as to say that the

29

latter is but a species of the former. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005) ("Retaliation ... is a form of 'discrimination' because the complainant is being subjected to differential treatment. Moreover, retaliation is discrimination "on the basis of sex" [for purposes of Title IX] because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." (citations omitted)); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008) (holding that although 42 U.S.C. § 1981 by its terms only prohibits race discrimination in the making and enforcement of contracts, it also authorizes a cause of action for retaliation); *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (federal employee who is a victim of retaliation for filing a complaint of age discrimination may assert a claim under the federal section provision of the ADEA, notwithstanding that it does not contain an express anti-retaliation provision). Also, *Gregory* and this case are also similar in that in neither EEOC alleged facts supporting that the plaintiff had actually *complained* about discrimination or otherwise engaged in activity protected by federal employment law.[14] Even so, this case is still arguably distinguishable from *Gregory* for at least two

_____

[14]In an unpublished opinion, the Eleventh Circuit suggested that *Gregory* deemed the race retaliation claim exhausted despite the plaintiff's failure to mark the "retaliation" box on the charge form on the theory that "the facts in that plaintiff's EEOC charge indicated that she was fired after complaining about race and gender discrimination, which reasonably would lead to an EEOC investigation of retaliation." *Hillemann*, 167 Fed. App'x at 749. Two other unpublished Eleventh Circuit decisions also can be interpreted as adopting a similar view of *Gregory*. *See Greene v. Elixir Indust., Inc.*, 152 Fed. App'x 838, 840 (11th Cir. 2005); *Jerome v. Marriot Residence Inn Barcelo Crestline/AIG*, 211 Fed. App'x 844, 846 (11th Cir. 2006); *see also Dowlatpanah v. Wellstar Health Syst., Inc.*, 2007 WL 639875, *5-6 (N.D. Ga. 2007). One district court has gone so far as to say that *Hillemann* "significantly limited the scope of *Gregory*" based on its characterization of the underlying facts and the basis of its result. *Sprinkle v. City of Douglas, Ga.*, 621 F. Supp. 2d 1327, 1350 (S.D. Ga. 2008). Of course, even setting aside the prior panel rule, *see Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003), *Hillemann* can do nothing to the precedential value of *Gregory* because *Hillemann*, as an unpublished decision, is not binding. *See* 11th Cir. R. 36-2. Furthermore, to the extent that *Hillemann* or other cases interpret *Gregory*'s result as resting on the premise that the EEOC charge alleged facts to the effect that the plaintiff had *complained* to anyone about

reasons.  First, *Gregory* repeatedly emphasized the fact that the EEOC charge had been filed without the assistance of an attorney.  Plaintiff here was represented, and clearly appears to have been assisted, by counsel in filing his EEOC charge materials.  Therefore, there is arguably less justification for reading his charge as liberally.  Second, the charge in *Gregory* also alleged that the employer had engaged in racially discriminatory conduct *prior to* the discharge, in the form of unwarranted negative job memos and more onerous sick leave requirements.  Accordingly, even though the charge did not allege that the plaintiff made *complaints* about those or other prior episodes of race discrimination or that she was terminated as a result, the allegations of prior race discrimination at least give rise to a greater expectation that the EEOC might investigate such earlier matters and whether the plaintiff might have complained.  By contrast, the charge in the instant case does not identify any action by the employer(s) that was allegedly motivated by age other than Plaintiff's termination.  Accordingly, there is less reason to think that the temporal scope of an EEOC investigation would encompass prior instances of age discrimination, whether Plaintiff might have complained about them, or been fired as a consequence.

Ultimately, the most prudent course is to deny the respective motions to dismiss insofar as they are based on this ground and they relate to the ADEA retaliation claims against the Water Authority and the Commission.  The issue is a close one.  Also, as further discussed below, other claims are due to proceed against the Commission and the Water Authority in any event.  Therefore, little will be lost by allowing discovery on these claims as well.  Of course, an interlocutory order

---

discrimination because of race or sex or any other federally protected characteristic and was fired for doing so, those cases are plainly wrong.  In short, as one district court has acknowledged, nothing in the *Gregory* opinion supports that the plaintiff's charge included any facts that she complained about discrimination or engaged in other protected activity.  *See Houston v. Army Fleet Services, LLC*, 509 F. Supp. 2d 1033, 1043 n.15 (M.D. Ala. 2007).

is subject to reconsideration by the court at any time prior to the entry of final judgment. *Covenant Christian Ministries, Inc. v. City of Marietta, Ga.*, 654 F.3d 1231, 1242 (11th Cir. 2011). Thus, the court may revisit this issue at summary judgment or later, if need be.

### e. Authorization under the Right-to-Sue Notice

In the final administrative exhaustion argument, the Commission contends that the ADEA claims are due to be dismissed on the theory that the right-to-sue notice does not authorize Plaintiff to bring suit under the ADEA. The Commission highlights that the boxes marked on the notice form indicate that the EEOC was terminating its processing of Plaintiff's claims under "Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act," but the boxes relating to claims under the ADEA were left blank. (*See* Doc. 25-1). This argument is without merit, as explained below.

Under the ADEA, the EEOC is to issue a notice to the charging party advising that the EEOC's processing of the charge is at a conclusion and that the charging party has the right to bring a judicial action within 90 days. 29 U.S.C. § 626(e). However, a plaintiff may bring suit under the ADEA before a right-to-sue notice has been issued, provided that 60 days have elapsed since the filing of the charge. 29 U.S.C. § 626(d); *Grayson,* 79 F.3d at 1100. Plaintiff filed this action less than 90 days after receiving a right-to-sue notice, so if the notice qualified under § 626(e), the ADEA claims were authorized and timely under that section. But even assuming that the notice did not constitute a valid authorization under § 626(e) because the notice does not specifically address the status of the EEOC's investigation into any ADEA claims, an ADEA judicial action would be permissible under § 626(d) even without a right-to-sue notice because Plaintiff filed this action more than 60 days after filing his charge. Accordingly, dismissal of the ADEA claims is not warranted

on this ground.

**B.      Fair Labor Standards Act**

**1.      Introduction**

The FLSA requires employers to pay covered employees one and one-half times their regular rate of pay for overtime, *i.e.*, hours worked in excess of 40 in a given workweek. *See* 29 U.S.C. § 207; *Christensen v. Harris County*, 529 U.S. 576, 578-79 (2000).  In Count Two, Plaintiff alleges that the "Defendants were the Plaintiff's employer" and that they "discriminated against [him] in violation of the FLSA" in that they "intentionally failed" to pay him overtime wages due.  (Compl. ¶¶ 32-33).  On such claims, Plaintiff has demanded "injunctive and declaratory relief, back pay, front pay, compensatory damages, punitive damages, treble damages, costs, including attorney's fees and other appropriate relief ... ."  (*Id.*, Ad Damnum Clause following ¶ 34).

The FLSA also contains an anti-retaliation provision, which states:

> [I]t shall be unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3); *see also generally Kasten v. Saint-Gobain Performance Plastics Corp.*, ___ U.S. ___, 131 S. Ct. 1325 (2011).  Plaintiff attempts to recover under that section, based on his allegations of "retaliation for complaining about the wrongful payment of wages ... in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended by the Equal Pay Act, 29 U.S.C. §§ 206(d) and 215(a)(3)."  (Compl. ¶ 13; *see also id.* at 1 (charging the defendants with "retaliation under the Fair Labor Standards Act/Equal Pay Act of 1963, 29 U.S.C. § 206(d) and

215(a)(3)[15]." (footnote added)).  Indeed, it would now appear from Plaintiff's brief that he conceives

the vague allegations of Count Three for "Retaliation" not otherwise specified as being founded upon

the anti-retaliation provision of the FLSA.  (*See* Pl. Opp. Brief, § V).

### 2.    FLSA Liability of the Individual Defendants

The Individual Defendants assert that all FLSA claims against them, for overtime and for

retaliation, are due to be dismissed.  To the extent that Plaintiff has named these defendants in their

official capacity as Commissioners or as members of the Water Authority, they are redundant of the

FLSA claims against those respective entities, and they are due to be dismissed.  *Thrower v. Peach*

*County, Georgia, Bd. of Educ.*, 2010 WL 4536997, *4 (M.D. Ga. Nov. 2, 2010); *Bean v. Fulton*

*Cnty. Sch. Sys.*, 2008 WL 515007, *2 (N.D. Ga. Feb.22, 2008).  Further, a person cannot be held

individually liable for violating the FLSA unless he is an "employer" within the meaning of the Act.

29 U.S.C. § 207(a)(1); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160

(11th Cir. 2008).  The Eleventh Circuit has held that the term "employer" under the FLSA does not

include a public official sued in his individual capacity.  *See Wascura v. Carver*, 169 F.3d 683, 686

(11th Cir. 1999); *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995); *see also Jarrett v. Alexander*,

---

[15]It is unclear why Plaintiff continues to insist that his claims in this action are based in
some part on the Equal Pay Act ("EPA").  As the court explained in a prior order, the EPA,
codified at 29 U.S.C. § 206(d), is an amendment to the FLSA, but it does not mandate overtime
pay, nor does it prohibit retaliation against one who engages in statutorily protected activity
related to overtime pay.  Rather, on its face, the EPA prohibits pay discrimination because of sex.
*See Washington County v. Gunther*, 452 U.S. 161, 172 (1981); *Alvarez Perez v. Sanford-Orlando
Kennel Club, Inc.*, 515 F.3d 1150, 1164 (11th Cir. 2010).  Plaintiff has not alleged sex
discrimination of any sort.  Plaintiff also hints that he believes that the FLSA's anti-retaliation
provision, 29 U.S.C. § 215(a)(3), is part of the EPA.  That is not so, for the anti-retaliation
provision pre-date by many years the enactment of the EPA in 1963.  *See, e.g., Bowe v. Judson
C. Burns, Inc.*, 137 F.2d 37, 38 (3d Cir. 1943).  The EPA has nothing to do with Plaintiff's
claims.

235 F. Supp. 2d 1208, 1215-16 (M.D. 2002); *Stratton v. Alabama Dep't of Corr.*, 2006 WL 752963, *3 (M.D. Ala. March 23, 2006); *Givens v. Board of Regents of Univ. Syst. of Ga.*, 2006 WL 6460770, *1 (M.D. Ga. May 1, 2006).   Accordingly, the FLSA claims against the Individual Defendants are due to be dismissed.

### 3.    Liability of the Commission and the Water Authority as "Employers" under the FLSA

The Commission and the Water Authority also contend that the FLSA overtime and retaliation claims against them are due to be dismissed on the theory that the allegations establish that the "other" entity was actually Plaintiff's "employer" for purposes of the FLSA.   However, such "finger-pointing" arguments of the Commission and the Water Authority are due to be rejected here for the essentially same reasons that they were found insufficient to warrant dismissal of the ADEA claims.   Plaintiff has sufficiently alleged that he was employed by both the Commission and the Water Authority, that both kept track of his overtime hours and failed to pay him as required by § 207 of the FLSA, and that both were responsible for terminating his employment for complaints about overtime pay.   Neither the Commission nor the Water Authority entitled to dismissal at the pleading stage on this basis.

### 4.    FLSA Statute of Limitations

The Commission and the Water Authority also argue that any FLSA claims are barred by the statute of limitations.   Under the FLSA, an "action ... to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the [FLSA] ... shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the

35

cause of action accrued." 29 U.S.C. § 255(a). Each failure to pay overtime begins a new statute of limitations period, so non-FLSA-exempt plaintiffs have a "cause of action with respect to any claims (i.e., any paychecks which omitted pay for overtime worked) that accrued within two years–three years, if the [employer]'s violations were willful–of the date the complaint was filed." *Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994). By contrast, where an FLSA retaliation claim is premised upon a discrete act, such as termination, the statute of limitations begins to run from the time of the act. *Id.*, at 585.

Plaintiff filed this action more than two, but less than three, years after he was terminated. Thus, the action was also filed more than two, but less than three, years after the last time Plaintiff could have potentially worked unpaid overtime hours for either the Commission or the Water Authority. Accordingly, the Defendants are correct that the two-year limitations period of § 255(a) bars all FLSA claims, whether for overtime in Count Two or for retaliation in Count Three, *except to the extent* that Plaintiff can establish that the violation was "willful." An employer's violation of the FLSA is "willful" where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

The Commission and the Water Authority further argue, however, that the FLSA claims are due to be dismissed on the theory that they are *necessarily* subject only to the default two-year limitations period of § 255(a). In support, the defendants assert that the allegations of the Complaint are insufficient to suggest any willful violation required to implicate the applicability of the three-year limitations period. Plaintiff has alleged, however, that the defendants "intentionally and in pattern and practice" failed to pay overtime due under the FLSA, despite having specifically kept

track of the overtime hours worked by Plaintiff and other similarly situated hourly employees. (Compl. ¶¶ 5, 21, 22, 33, 34).  He has also pled that the acts of retaliation committed in Count Three, now asserted to have been in violation of the FLSA, "were performed with malice, willfulness, and reckless indifference to Plaintiff's protected rights."  (*Id.* ¶ 38).  At this early stage, it cannot be resolved that Plaintiff's FLSA claims are, as a matter of law, subject only to the two-year limitations period rather than the three-year period for willful violations.  *See Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1008 (2d Cir. 1991); *White v. Subcontracting Concepts, Inc.*, 2008 WL 2959723, *1 (M.D. Fla. July 30, 2008); *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, 2008 WL 5115005, *8 n.5 (M.D.Ga. Dec. 4, 2008).  This is particularly true with regard to the FLSA retaliation claims, which "require[ ] intentional action by the employer in response to protected employee conduct," *Knight*, 19 F.3d at 584, and have been recognized by the Eleventh Circuit, at least in dicta, as being subject to the three-year limitations period.  *Id.*; *see also Sims v. Fort Wayne Community Schools*, 2005 WL 3801461, *11 (N.D. Ind. Feb. 2, 2005) ("[I]t is highly unlikely that any employer in today's climate would not be aware that intentionally terminating an employee for filing a complaint under the FLSA is unlawful retaliation").  Furthermore, a finding of intentional retaliation will at least very often itself support a determination that the employer's violation of federal law was "willful."  *Cf. Edwards v. Board of Regents of Univ. of Ga.*, 2 F.3d 382, 384 & n.5 (11th Cir. 1993) (declining to reach the question of "whether retaliation under the ADEA must *always* constitutes a willful wrong"[16] (emphasis added));*see also Deloughery v. City of Chicago*, 422 F.3d 611, 617 n. 3 (7th Cir. 2005);

---

[16]     The standard used to judge whether an employer's violation of federal law was "willful" is the same under both the ADEA and the FLSA.  *See McLaughlin*, 486 U.S. at 133.

*Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1252 (5th Cir. 1995); *Powell v. Rockwell Intern. Corp.*, 788 F.2d 279, 287-88 (5th Cir. 1986); *Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F.2d 1249, 1256 (2d Cir. 1987). Neither the Commission nor the Water Authority are entitled to dismissal of the FLSA overtime claims in Count Two or the FLSA retaliation claims in Count Three to the extent Plaintiff may be able to establish the employer's violation at issue was "willful."

    **D.    Breach of Contract**

All Defendants also move for dismissal of the breach-of-contract claims set forth in Count Four. It is arguable that such contentions are moot except insofar as they are asserted by the Commission itself, for the Commission is the only party against whom relief is expressly sought in Count Four. Nonetheless, Plaintiff has asserted in the introductory paragraph of his pleading that "the Defendant entities breached the employment contract with the Plaintiff as created by the Personnel Polices and Procedures of Cleburne County Handbook." (Compl. at 1). Accordingly, it may be that Plaintiff is attempting to assert contract claims not only against the Commission but also the Commission, if not all defendants. For the sake of argument, it is assumed that Plaintiff's contract cause of action seeks to impose liability against all defendants.

The Defendants argue that Plaintiff's contract claim is based upon an alleged breach of the provisions of a handbook entitled "Personnel Polices and Procedures of Cleburne County, Alabama" (the "County Handbook"), which is distributed to county employees. The Defendants emphasize, however, that the County Handbook explicitly disclaims that it is intended to constitute a contract and reserves to the Commission the right to deviate from published policies and procedures. In support, the Commission has submitted excerpts from the County Handbook, which include the

following statements in the "Foreword":

> *All personnel policies and procedures, as contained in this personnel system, are intended to be guidelines and not a contract between the county and its employees and should not be viewed as such.*  They are established to assist elected officials and supervisors in making day-to-day employee decisions.  They are not considered to be all inclusive; therefore, when a situation arises, where the literal interpretation and/or application of a particular guidelines would cause a result that is unacceptable, the county commission reserves the right to deal with such situation in a manner that is best for the county and the citizens of Cleburne County.

(Doc. 15-2 ("County Handbook Excerpts") at ii-iii) (emphasis added).

Alabama substantive law governs these claims.  *See* 28 U.S.C. § 1652; *Flava Works, Inc. v. City of Miami*, 609 F.3d 1233, 1237 (11th Cir. 2010).  In Alabama, employment is generally terminable at will by either party, with or without cause.  *Harper v. Winston County*, 892 So. 2d 346, 351 (Ala. 2004).  However, "the employment-at-will relationship can be modified by provision in an employee handbook by which an employer promises not to discharge an employee except by specified procedures or for specified causes."  *Campisi v. Scoles Cadillac, Inc.*, 611 So. 2d 296, 298 (Ala. 1992).  The Alabama Supreme Court has explained:

> Of course, to become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy. However, whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, rather than by their uncommunicated beliefs.... Indeed, if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook.

*Hoffman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 735 (Ala. 1987).  Whether the terms of a handbook meet the requirements of a contract offer is generally a question of law to be decided by the court.  *Dykes v. Lane Trucking, Inc.*, 652 So. 2d 248, 250 (Ala. 1994); *Carr v. Stillwaters Development Co.*, 83 F. Supp. 2d 1269, 1278 (M.D. Ala. 1999).  A host of cases from Alabama state

and federal courts have held that employers are entitled to prevail as a matter of law on contract claims founded upon employee handbooks that expressly disclaim an intention to make a contract or reserve to the employer the right to change policies unilaterally. *See Harper*, 892 So. 2d at 351-52; *Abney v. Baptist Med. Centers*, 597 So. 2d 682, 683 (Ala. 1992); *Hanson v. New Technology, Inc.*, 594 So. 2d 96, 99 (Ala. 1992); *Clark v. America's First Credit Union*, 585 So. 2d 1367, 1370 (Ala. 1991);*McCluskey v. Unicare Health Facility, Inc.*, 484 So. 2d 398, 400-01 (Ala. 1986); *Stinson v. American Sterilizer Co.*, 570 So. 2d 618, 621-22 (Ala. 1990); Mack v. Arnold, 929 So. 2d 480, 484 (Ala. Civ. App. 2005); *Michelin Tire Corp. v. Goff*, 864 So. 2d 1068, 1076-77 (Ala. Civ. App. 2005); *Jackson v. Cintas Corp.*, 391 F. Supp. 2d 1075, 1101-02 (M.D. Ala. 2005); *Wyant v. Burlington Northern Santa Fe R.R.*, 210 F. Supp. 2d 1263, 1294 (N.D. Ala. 2002); *Carr*, 83 F. Supp. 2d at 1279.

The Commission argues that under the above line of cases, the language in the County Handbook requires the dismissal of the contract claims. In response, Plaintiff does not dispute that his contract claims are based upon the County Handbook. He also does not dispute that the County Handbook he received contains the language highlighted by the Moving Defendants that expressly disclaims contractual intent and reserves to the employer the unilateral right to deviate from the published policies. Nor does he argue that the above line of Alabama cases is distinguishable or otherwise not controlling. Plaintiff argues, rather, only that it is improper as a matter of procedure to consider the County Handbook excerpts at this time. Plaintiff argues that since the instant motion to dismiss was filed pursuant to Rule 12(b)(6), Fed. R. Civ. P., the court is prohibited from considering any materials beyond the Complaint. Plaintiff highlights that the excerpts of the County Handbook were filed not with the Complaint but rather as an exhibit to a motion to dismiss.

Therefore, he contends, the excerpts from the County Handbook may not be considered without converting the motion to one for summary judgment under Rule 56, Fed. R. Civ. P. Plaintiff is incorrect.

While a court analyzing a motion to dismiss under Rule 12(b)(6) is generally limited to examining the complaint itself, the court is also authorized to consider documents referred or attached to the complaint that are central to the plaintiff's claims and whose authenticity is unchallenged. *See SFM Holdings, Ltd. v. Banc of Amer. Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005); *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). It is only if the court considers materials beyond that scope that it is required to treat the motion as one for summary judgment under Rule 56. *See* Rule 12(d), Fed. R. Civ. P.; *SFM Holdings*, 600 F.3d at 1337; *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010).

The Complaint explicitly refers to the County Handbook and alleges that it is the breach of its provisions that forms the basis of Plaintiff's contract claims. Plaintiff does not offer anything to dispute the authenticity, content, or relevance of the County Handbook excerpts filed by the defendants. Thus, the County Handbook excerpts may be considered without converting the motion to one for summary judgment. *See Davis v. Pacific Saw & Knife Co.*, 2008 WL 4319981, *2 & n.1 (D. Or. Sept. 16, 2008); *James v. Heartland Health Services*, 2005 WL 678732, *6 (N.D. Ill. Jan. 28, 2005). And based on those excerpts, Plaintiff's breach-of-contract claims are subject to dismissal. *See, e.g., Abney*, 597 So. 2d at 683; *Hanson*, 594 So. 2d at 99; *Clark*, 585 So. 2d at 1370; *McCluskey*, 484 So. 2d at 400-01. The motion to dismiss is due to be granted as it relates to the breach-of-contract claims in Count Four, as to all defendants.

### E.    Punitive Damages Against the Commission and the Water Authority

Finally, the Commission and the Water Authority argue that the remaining claims against them, whether brought under the ADEA or the FLSA, are due to be dismissed to the extent that they seek punitive damages.  The defendants are correct on this point.  Traditional "punitive damages" in an unliquidated amount are not available in this circuit under the FLSA or the ADEA, even against private sector employers.  *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 939 (11th Cir. 2000); *Dean v. American Security Ins. Co.*, 559 F.2d 1036, 1039 (5th Cir. 1977).  Accordingly, Plaintiff's ADEA and FLSA claims against the Commission and the Water Authority are due to be dismissed to the extent that they seek punitive damages in an unliquidated amount.[17]

## IV.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Based on the foregoing, it is recommended as follows: The motion to dismiss filed by the Water Authority and Jerry Vaughn, Roger Hand, Sam Britt, Chris Jackson, and Joe Bill Conkle (Doc. 31) is due to be GRANTED IN PART AND DENIED IN PART.  The motion to dismiss filed by the Commission and Joel Robinson, Dwight Williamson, and Tracy Lambert (Doc. 33) is likewise due to be GRANTED IN PART AND DENIED IN PART.  As a result, only the following claims, all against only the Water Authority and the Commission, are due to remain viable:

---

[17]While the FLSA and the ADEA do not authorize "punitive damages," both statutes do authorize an award of "liquidated" damages in an additional amount equal to the actual wages lost.  29 U.S.C. § 216(b); 29 U.S.C. § 626(b).  Such an award is generally mandatory where a FLSA violation is found, while such damages are available under the ADEA only if a violation was "willful."  29 U.S.C. § 626(b); *CIR v. Schleier*, 515 U.S. 323, 326 (1995).  However, the defendants' motions to dismiss do not seek to preclude Plaintiff from recovering such liquidated damages, which is a distinct issue.  *See Hunter v. City of Mobile*, 2010 WL 1511569, *1 (S.D. Ala. April 13, 2010).  Thus, the ruling that Plaintiff is not entitled to "punitive damages" on his ADEA and FLSA claims should not be understood as necessarily precluding him from seeking "liquidated damages" under either statute.

    (1)       ADEA age-discrimination claims founded upon Plaintiff's discharge;

    (2)       ADEA retaliation, also founded upon the discharge;

    (3)       FLSA retaliation, also founded on the discharge and only to the extent that the violation was "willful," and;

    (4)       FLSA overtime, also only to the extent that the violation was "willful."

All other claims, including all claims against and Defendants Vaughn, Hand, Britt, Jackson, Conkle, Robinson, Williamson, and Lambert, are due to be DISMISSED WITH PREJUDICE.

    DONE this 17th day of January, 2012.

 

_____

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE